**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TANEYSHA BASS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09-cv-1087 |
| | ) | |
| v. | ) | |
| | ) | |
| BRIAN J. HANSEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Defendants Brian J. Hansen, David R. Zacek, Dennis G. Davis, Charles E. Flynn, Joseph W. Boisso, and the City of Chicago have filed a motion for summary judgment on all counts brought by Plaintiff Taneysha Bass in her Amended Complaint in the above-titled case. Plaintiff has also filed a motion for partial summary judgment on Count I and Count VII of her Amended Complaint.

This case arises from Plaintiff's arrest for certain statements she made after the Chicago Police broke up a community basketball tournament in her apartment complex. We deny in part and grant in part Defendants' motion for summary judgment. We also deny Plaintiff's motion for partial summary judgment.

# I. STATEMENT OF FACTS[1]

## A. The Chicago Police Break Up a Basketball Tournament at the Ickes Complex.

On July 22, 2007, Plaintiff Taneysha Bass attended a basketball tournament at the outdoor court near her apartment in the Harold Ickes Housing Complex ("Ickes Complex"). (Defs.' 56.1 Facts ¶¶ 4–5, 7, 23; Pl.'s 56.1 Facts ¶¶ 7, 15.)  The Chicago Housing Authority ("CHA") owned and managed the Ickes Complex at that time, although much of the Ickes Complex has since been torn down.  (Pl.'s 56.1 Facts ¶¶ 5–6.)  The tournament was quite popular and had drawn a crowd between 100 and 500 people, some of whom did not live in the Ickes Complex.  (Defs.' 56.1 Facts ¶ 7; Pl.'s Resp. ¶¶ 7, 15.)

The tournament also attracted the attention of the Chicago Police Department. Defendants contend that a stabbing at a similar event at the Ickes Complex one week prior and CHA complaints about security at these events had created cause for concern.[2]  (Defs.' 56.1 Facts ¶¶ 13–14; Riley Dep. at 35.)  The tournament organizers had also failed to obtain a written

---

[1]  Unfortunately, the parties quibble over portions of numerous statements in their Local Rule 56.1 statements of undisputed facts and responses thereto.  Where each party failed to deny a particular statement with support from the record, we have deemed that statement admitted. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).  Lest there be any confusion, we have also occasionally cited to the parties' responses as admissions even when the parties have nominally deemed them denials.  We have done so because the parties' denials were frequently not substantive denials supported by the record but were instead unsubstantiated quibbles.

[2]  Plaintiff objects, although without raising it properly, that the statement that CHA had complained to the police about security at these events is inadmissible hearsay.  (Pl.'s 56.1 Resp. ¶ 14.)  However, we do not rely on this statement to prove whether security was inadequate at these events. Fed. R. Evid. 801©.  Instead, we treat the statement as a verbal act offered to prove the effect on the listeners, that is, the police officers who chose to break up tournament on July 22, 2007. *Id.* (1972 Advisory Committee Note)

permit to hold the basketball tournament, although Plaintiff vehemently denies that a written permit was necessary.  (Defs.' 56.1 Facts ¶ 6; Pl.'s 56.1 Facts ¶ 12.)

Regardless, at approximately 7 p.m. on the day of tournament, at least twenty Chicago police officers arrived at the Ickes Complex to break up the tournament.  (Pl.'s 56.1 Facts ¶ 17; Defs.' 56.1 Facts ¶ 20.)  The officers ordered everyone in the crowd to leave the basketball court. (Defs.' 56.1 Facts ¶ 23; Pl.'s 56.1 Facts ¶ 24.)  Some officers also ordered non-residents to leave the Ickes Complex.  (Zacek Dep. at 65; Hansen Dep. at 78.)  Residents could remain on the premises, however, so long as they stayed outside the basketball court.[3]  (Pl.'s 56.1 Facts ¶ 25.)

The decision to break up the tournament was not popular with those in attendance, including Plaintiff.  (Pl.'s 56.1 Facts ¶ 23; Defs.' 56.1 Facts ¶ 29.)  Disgruntled tournament-goers objected to the police's action saying, for example, "Why you always fucking with us?"  (Defs.' 56.1 Facts ¶ 29.)  Defendants claim it took thirty to forty minutes to clear the basketball court. (Defs.' 56.1 Facts ¶ 27.)  Defendants also claim that several people in attendance refused to leave the area outside the basketball court.  (Defs.' 56.1 Facts ¶ 28.)  As Defendants' acknowledge, Plaintiff, as an Ickes Complex resident, was free to remain in the area outside of the basketball court and did not have to go home.  (Defs.' 56.1 Resp. ¶¶ 25–26; Hansen Dep. at 78.)

---

[3] We use the term "basketball court" to refer to the area which was comprised of the court itself enclosed by some sort of perimeter with a lockable gate.  (Bass Dep. at 12; Boyd Dep. at 29; Boisso Dep. at 28; Fleming Dep. at 59.)  Because multiple witnesses referred to this area as an "arena," we also presume that the area included at least some space for spectators beyond the court itself.  (Bass Dep. at 12, 68; Vance Dep. at 40.)

**B. Plaintiff Voices Her Objections to the Police's Action to Those Around Her.**

It was in the area outside the basketball court that the incident at the core of this lawsuit took place. (Zacek Dep. at 73; Bass Dep. at 59–60.)  There, Plaintiff made statements that ultimately lead to her arrest by Defendant Officers Hansen and Zacek three days later. (Defs.' 56.1 Facts ¶¶ 37–44, 52–59.)  The parties dispute the substance, context, and effect of these statements.

The parties jointly acknowledge that Plaintiff, while standing approximately twenty-five feet from Officers Hansen and Zacek in the area just outside basketball court, stated to a group of at least five people that the police would not have broken up the tournament if white people had been involved. (Defs.' 56.1 Facts ¶¶ 35, 37, 42; Pl.'s 56.1 Facts ¶¶ 33–34.)  Officer Hansen recounted Plaintiff as saying, "If this was a white party, that there wouldn't be any problems." (Hansen Dep. at 66.)  Plaintiff recalls stating that, "If it was white people, they wouldn't do that to them." (Bass Dep. at 61.)  Plaintiff also admits making other comments critical of the police, including stating that the police "get away with so much" and that they are "crooked." (Bass Dep. at 62–63.)  The parties also agree that Plaintiff made these statements loud enough for Officers Hansen and Zacek to hear them, which they in fact did. (Defs.' 56.1 Facts ¶¶ 41–42; Bass Dep. at 64.)

The parties disagree ardently as to what else, if anything, Plaintiff said.  Most significantly, Officer Hansen claims that, in addition to her statements about the police being discriminatory and "crooked," Plaintiff yelled to the people standing around her, "Why you niggers putting up with this shit?  Kick their—Go kick their asses." (Hansen Dep. at 67.)  The case incident report written that day by Officers Hansen and Zacek recounts Plaintiff exhorting

4

others around her to "beat those cops['] asses." (Defs.' Ex. 23 at 1, 3.) Officer Zacek also

testified at his deposition that Plaintiff said, "Let's get together and beat their white police

asses." (Zacek Dep. at 76.) Plaintiff denies making these statements. (Pl.'s 56.1 Facts ¶ 39;

Bass Dep. at 156.)

The parties also disagree about the size of Plaintiff's audience. Plaintiff claims that,

despite her volume, she was speaking in the context of a "small discussion" among five to seven

female acquaintances. (Pl.'s 56.1 Facts ¶ 35; Bass Dep. at 62.) Officer Zacek recalled Plaintiff

standing in front of a group of fifty predominantly male people, although he could not identify

"who was with her or not." (Zacek Dep. at 74, 90.)

The effects of Plaintiff's words are also in dispute. Officer Zacek testified at his

deposition that Plaintiff's words caused others nearby to start yelling, "Yeah, she's right. Fuck

these white police." (Zacek Dep. 76.) Officer Zacek further testified these individuals, some of

whom had begun to disperse prior to Plaintiff's protestations, "stopped in their tracks and made

the crowd even larger." (*Id.* at 77.) Both Officers Zacek and Hansen also recalled that

Plaintiff's statements immediately preceded two bottles and some rocks being thrown from the

crowd in their direction. (*Id.*; Hansen Dep. at 67–69.) Officer Lomax, who was also nearby,

described the crowd as "feeding off of" Plaintiff's words, even though he could not recall

precisely what she said. (Lomax Dep. at 52–53.) Officer Lomax noted that members of the

crowd became "bolder" in that they started "getting too close to us." (*Id.* At 53–54.) Officer

Zacek added that, "[A]t one point, we were almost totally surrounded by a large crowd." (Zacek

Dep. at 77.) As the situation supposedly deteriorated, Officer Zacek recalled being ordered to

"pull back and regroup" in the interest of "officer safety," although he did not recall from whom

5

or how he received this order. (Zacek Dep. at 80.) Other officers did not recall having to retreat. (Davis Dep. at 82; Lomax Dep. at 61.)

Plaintiff claims her words elicited cheers but nothing more from the people around her. (Pl.'s 56.1 Facts ¶ 42.) Plaintiff particularly denies that anything was thrown at the police, that the police became surrounded, or that the police had to retreat. (*Id.* ¶ 46; Pl.'s 56.1 Resp. ¶¶ 44–45.) Even if members of the crowd threw things at the police, Plaintiff points to Officer Lomax's testimony that he could not "connect any specific words [Plaintiff] said with the bottles being thrown." (Lomax Dep. at 60.) The parties agree that the police suffered no other violence that day besides the disputed bottle- and rock-throwing. (Hansen Dep. at 72, 76.)

Plaintiff also asserts that the most notable reaction to her statements came from Officer Hansen, who supposedly responded by pointing at Plaintiff and saying he was "going to get that motherfucker" or "that bitch." (Pl.'s 56.1 Facts ¶ 60; Vance Dep. at 32–33; Fleming Dep. at 63.) Officer Hansen recalls saying "something" to Plaintiff but does not recall the substance other than to note that he did not use profanity. (Hansen Dep. at 71–72.)

After Plaintiff's statements, Plaintiff and the other people outside the basketball court eventually dispersed. (*Id.* at 78.) Plaintiff remained in the area outside the basketball court for thirty to forty-five minutes before walking home. (Bass Dep. at 67–68.)

### C. The Police Prepare a Case Incident Report Naming Plaintiff on July 22, 2007.

The police left the Ickes Complex on July 22, 2007 without making any arrests. (Pl.'s 56.1 Facts ¶ 31.) Officer Hansen claims, however, that he made the decision to arrest Plaintiff that day but chose to delay the arrest in order to avoid escalating a purportedly dangerous situation. (Defs.' 56.1 Facts ¶ 53; Hansen Dep. at 79; Defs.' Ex. 23 at 3.) By contrast, Plaintiff

6

claims Officer Hansen did not arrest Plaintiff that day because he did not know what charge, if any, for which he had probable cause to arrest Plaintiff.  (Pl.'s 56.1 Resp. ¶ 53.)

It is undisputed that Officers Hansen and Zacek prepared a case incident report on the day of the incident.  (Defs.' 56.1 Facts ¶ 46.)  That report identifies Plaintiff as having committed a "Public Peace Violation," specifically, "Mob Action."  (Defs.' Ex. 23 at 2.)  The narrative recounts Plaintiff stating loudly to the people around her: "Why are you niggers taking this shit[?]  They wrong[.]  Beat those cops['] asses."  (*Id.* at 3.)  The report also states that the reason for delaying the arrest was to "prevent a possible riot situation."  (*Id.*)  The parties also affirmed that Officers Hansen and Zacek knew Plaintiff and where she resided at that time.  (*Id.*; Pl.'s 56.1 Facts ¶ 62.)  Thus, the officers believed they could find and arrest Plaintiff at a later date.  (Defs.' Ex. 23 at 3; Pl.'s 56.1 Facts ¶ 62.)

### D.  Officers Hansen and Zacek Arrest Plaintiff on July 25, 2007.

Officers Hansen and Zacek arrested Plaintiff on July 25, 2007, three days after the incident at the Ickes Complex.  (Pl.'s 56.1 Facts ¶ 64; Hansen Dep. at 98.)  Around 7:20 p.m. on the evening of July 25, Officers Hansen and Zacek encountered Plaintiff walking behind her apartment building with her friend, her babysitter, and her child, Breyonce.  (Pl.'s 56.1 Facts ¶ 58; Defs.' 56.1 Facts ¶ 57.)  There, the officers stopped Plaintiff and placed her under arrest. (*Id.*)  According to Defendants, Officer Hansen informed Plaintiff he was arresting her for "inciting a riot" at the Ickes Complex three days prior.  (Defs.' 56.1 Facts ¶ 59; Hansen Dep. at 99.)  Plaintiff recalled that Officer Hansen, after initially refusing to tell her the reason for her arrest, told her she was being arrested for her "fucking mouth."  (Bass Dep. at 97.)

Subsequent events indicate that there may have been some confusion as to the appropriate charge to allege. After transporting Plaintiff to the police station, Officer Hansen instructed Defendant Officer Dennis Davis to prepare a misdemeanor complaint against Plaintiff on Officer Hansen's behalf. (Davis Dep. at 88–89.) Officer Davis prepared every aspect of the complaint—including signing Officer Hansen's name as the Complaintant—except writing the words "Recless [sic] Conduct" in the place designated for the alleged offense. (*Id.* at 86; Defs.' Ex. 22 at 1.) Officer Hansen acknowledged that he wrote the words "Recless [sic] Conduct" over a previous, unknown charge that had been whited out. (Hansen Dep. at 123.) The description of the offense on the complaint alleges that Plaintiff, on "25 JUL 2007 [sic]":

> did knowingly intentionally recklessly, by the use of force and violence, did disturb the public peace in that she incited riot [sic] with other CHA residents (Harold Ickes) and without authority of law, did stated [sic] "Kick the Police Ass".

(Defs.' Ex. 22 at 1.) Plaintiff claims this description reads more like a mob action charge than a reckless conduct charge. (Pl.'s 56.1 Facts ¶ 73.)

Officer Hansen also conferred with his watch commander, Defendant Officer Charles Flynn, about what the appropriate charge was. (Hansen Dep. at 80–81; Flynn Dep. at 19.) Officer Hansen testified that Officer Flynn questioned him about whether "inciting a riot," the crime Officer Hansen claims he intended to charge, was still a crime in Illinois. (Hansen Dep. at 81, 122.) Officer Flynn did not recall the substance of his conversation with Officer Hansen. (Flynn Dep. at 19, 50.) Officer Flynn only remembered considering probable cause for the reckless conduct charge listed on the police report. (*Id.* at 21.) The narrative section of the arrest report describes Plaintiff yelling among a crowd of "over 400 people" to "kick [the] police asses" and "telling all the people out there to ignore [the police's] directions and stand together

8

and to make [the police] move them." (*Id.* at 20; Defs.' Ex. 19 at 2–3.) On this basis, Officer

Flynn approved probable cause for reckless conduct at 8:53 p.m. on July 25, 2007. (Flynn Dep.

at 22–23; Defs.' Ex. 19 at 3.)

After Officer Flynn's initial approval, Defendant Officer Joseph Boisso conducted a final

review of the arrest report. (Pl.'s 56.1 Facts ¶ 75.) Officer Boisso described this review as

having a "limited scope" and focusing on the arrested person's prior criminal history or

outstanding warrants. (Boisso Dep. at 11–13.) Officer Boisso did not even necessarily review

the narrative in the arrest report at that stage. (*Id.* at 13.) Officer Boisso also did not recall

reviewing the narrative in Plaintiff's arrest report, nor could he recall "anything about her case."

(*Id.* at 16.) Nevertheless, the arrest report indicates Officer Boisso gave final approval of the

probable cause to arrest Plaintiff at 2:32 a.m. on July 26, 2007. (Defs.' Ex. 19 at 5; Pl.'s 56.1

Facts ¶ 75.)

### E. Plaintiff Goes to the Hospital Before Being Released from Custody.

Meanwhile, as the police were finalizing the charge against her, Plaintiff complained of

stomach and chest pains. (Defs.' 56.1 Facts ¶ 66; Bass Dep. at 122.) Two unidentified officers

then transported Plaintiff to the emergency room at Mercy Hospital. (Defs.' 56.1 Facts ¶ 67.)

Plaintiff ultimately requested to leave the hospital without seeing a doctor, however, when she

learned that her hospital visit would not cut short her detention time. (Bass Dep. at 124.) The

arrest report indicates Plaintiff arrived at Central Female Lockup from the hospital at 11:26 p.m.

on July 25, 2007.[4] (Defs.' Ex. 19 at 4.) Finally, the arrest report indicates that Plaintiff was

---

[4] Plaintiff improperly raises several evidentiary objections to Defendants' Exhibit 19 on this point, including failure to authenticate the document. But Plaintiff herself relied on an identical copy of the arrest report in deposing Officer Boisso. (Boisso Dep., Ex. 1.) Plaintiff

released from detention at 5:00 a.m. on July 26, 2007 on a $1,000 Recognizance Bond. (Defs.'
Ex. 19 at 4; Bass Dep. 133–34.)

### F. The Circuit Court Strikes the Charge Against Plaintiff with Leave to Reinstate.

On September 12, 2007, the State's Attorney for Cook County moved to strike the charge
against Plaintiff with leave to reinstate. (Defs.' 56.1 Facts ¶ 70.) The Circuit Court for Cook
County granted the motion. (Pl.'s 56.1 Resp. ¶ 70.)

## II. STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine issue as to any material fact
and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56©.  A
genuine issue for trial exists when "the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct.
2505, 2510 (1986).  This standard places the initial burden on the moving party to identify "those
portions of the pleadings, depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue
of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)
(internal quotations omitted).  Once the moving party meets this burden of production, the
nonmoving party "may not rest upon the mere allegations or denials of the adverse party's
pleading" but rather "must set forth specific facts showing that there is a genuine issue [of
material fact] for trial." Fed. R. Civ. P. 56(e).  In deciding whether summary judgment is

---

also relies on Defendants' Exhibit 19 in her own Statement of Undisputed Facts, referring to "the
facts stated in the narrative in the arrest report." (Pl.'s 56.1 Facts ¶ 75.)  In addition to failing to
raise properly her objections in motions separate from her Rule 56.1 Response, Plaintiff has also
waived any substantive basis for an objection by her own reliance on Defendants' Exhibit 19.

appropriate, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor.  *See Anderson*, 477 U.S. at 255.

## III.  ANALYSIS

Plaintiff claims that her arrest on July 25, 2007 in relation to events on July 22, 2007 violated her rights under the First (Count VII) and Fourth (Count I) Amendments to the United States Constitution.  U.S. Const. amdts. I, IV.  Plaintiff furthermore claims that Defendant Officers failed to intervene to prevent these violations (Count II), unlawfully detained her (Count III), conspired to infringe her constitutional rights because of racial animus in violation of 42 U.S.C. § 1985 (Count IV), conspired to infringe her constitutional rights in violation of 42 U.S.C. § 1983 (Count V), and maliciously prosecuted her in violation of Illinois law (Count VI). We first consider Counts I and VII, for which Defendants and Plaintiff have both filed motions for summary judgment.  We then consider the remaining counts, for which Defendants alone have filed a motion for summary judgment.

### A.  Count I: § 1983 False Arrest Claim

#### 1.  Defendants' Motion for Summary Judgment

Because both Plaintiff and Defendants have filed motions for summary judgment on Plaintiff's Fourth Amendment false arrest claim, we take each of the motions in turn.[5]  In doing so, we treat the nonmoving party's evidence as true, and draw all reasonable inferences in that

---

[5]  We also acknowledge that Plaintiff voluntarily agreed to the dismissal of Defendants Danny Riley, Anthony Pontrelli, Raymond Lomax, and Chris Marzano in her Response to Defendants' Motion for Summary Judgment.  (Pl.'s Resp. at 2.)  Accordingly, we dismiss these Defendants on all counts without costs to either side.

party's favor.  *See Anderson*, 477 U.S. at 255.  Since we first consider Defendants' motion, we must treat Plaintiff's evidence with the required deference.

Defendants are entitled to summary judgment on Plaintiff's false arrest claim if they can show they had probable cause to arrest her.  *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009).  The existence of probable cause is an absolute defense to this type of claim. *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007).  A police officer has probable cause to arrest a person if, at the time of arrest, the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Gonzalez*, 578 F.3d at 537 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S. Ct. 2627, 2632 (1979)).  We make this determination by viewing the circumstances from the perspective of a reasonable person in the position of the arresting officer, not on the facts as perceived by an omniscient observer.  *Id.*; *Stokes v. Bd. of Educ. of City of Chi.*, 599 F.3d 617, 622 (7th Cir. 2010).  But where "there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them," the probable cause determination must be made by the jury.  *Gonzalez*, 578 F.3d at 537.  Thus, "[o]nly if the underlying facts claimed to support probable cause are not in dispute may the court decide whether probable cause exists."  *Id.*

In a case such as this one, where confusion existed as to the appropriate criminal charge, it is important to acknowledge that the probable cause determination need not rest exclusively on the offense charged or even a closely-related charge.  *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S. Ct. 588, 593 (2004) (determining that probable cause need not be limited to offenses

"closely related" to the offense ultimately charged). Probable cause to arrest for any crime will undermine a § 1983 false arrest claim. *Williams*, 509 F.3d at 399.

In addition, each Defendant must have "caused or participated in" Plaintiff's alleged constitutional deprivation in order to be individually liable under § 1983. *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1998). Here, the alleged deprivation is an arrest made without probable cause. Thus, to be liable, an individual Defendant must have "caused or participated in" Plaintiff's arrest. *Id.* An arrest occurs when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* (citing *United States v. Mendenhall*, 446 U.S. 544, 544, 100 S. Ct. 1870, 1877 (1980)).

### a. Officers Davis, Flynn, and Boisso

It is undisputed that Officers Hansen and Zacek arrested Plaintiff on July 25, 2007. (Defs.' 56.1 Facts ¶ 57; Pl.'s 56.1 Resp. ¶ 57.) It is also undisputed, however, that Officer Davis did not arrive at the scene of Plaintiff's arrest until she had already been handcuffed and placed in the back of a police car. (Defs.' 56.1 Facts ¶¶ 61–62; Pl.'s 56.1 Resp. ¶ 61; Davis Dep. at 98.) Similarly, Officers Flynn and Boisso did not learn of Plaintiff's arrest until after Officers Hansen and Zacek had transported her to the police station. (Defs.' 56.1 Facts ¶¶ 64–65; Pl.'s 56.1 Resp. ¶¶ 64–65.) Yet for Fourth Amendment purposes, Plaintiff's arrest occurred at the moment when Officers Hansen and Zacek handcuffed her and placed her in the back of their police car. *Jenkins*, 147 F.3d at 583. These circumstances would have indicated to a reasonable person in Plaintiff's position that she was not free to leave. *Id.* Although Plaintiff makes much of alleged problems with the misdemeanor complaint that Officer Davis prepared, he prepared that document after Plaintiff's arrest. (Davis Dep. at 103.) Just as in *Jenkins*, where the defendant

police officer did not assist in the plaintiff's physical arrest but only in the preparation of the complaint after the arrest, we are unable to find that Officer Davis "caused or participated in" Plaintiff's arrest. *Jenkins*, 147 F.3d at 583. Because Officers Davis, Flynn, and Boisso learned of Plaintiff's arrest after it happened, they were not personally involved in the alleged constitutional deprivation. *Id.* We therefore grant them summary judgment on this count.

### b. Officers Hansen and Zacek

Despite confusion about the appropriate charge, Officers Hansen and Zacek arrested Plaintiff for reckless conduct as defined by Illinois statute. (Defs.' Ex. 19 at 1; Hansen Dep. at 122-123.) 720 ILCS 5/12-5(a). The Illinois reckless conduct statute states:

> A person who causes bodily harm to or endangers the bodily safety of an individual by any means, commits reckless conduct if he or she performs recklessly the acts that cause the harm or endanger safety, whether they otherwise are lawful or unlawful.

Illinois courts have described reckless conduct as "a broad and all-inclusive offense." *Carrigan v. Bd. of Fire and Police Comm'rs of Vill. of Glendale*, 121 Ill. App. 3d 303, 309, 459 N.E.2d 659, 665 (2nd Dist. 1984). The offense has therefore burgeoned beyond its intended application to "the reckless homicide type of conduct where no homicide results." *People v. Burton*, 100 Ill. App. 3d 1021, 1025, 427 N.E.2d 625, 629 (4th Dist. 1981). In keeping with this trend, Illinois courts have construed the statute's act requirement to encompass a "failure or omission to take actions." *People v. Khan*, 136 Ill. App. 3d 754, 759, 459 N.E.2d 1030, 1034 (1st Dist. 1985). Thus, in addition to firing a gun in an enclosed area, *Carrigan*, 459 N.E.2d at 665, or throwing a beer bottle at a police car, *People v. Bustamante*, 334 Ill. App. 3d 515, 522, 778 N.E.2d 344, 349 (2nd Dist. 2002), reckless conduct in Illinois also includes such inaction as failing to maintain one's property to the point of endangering others, *Khan*, 136 Ill. App. 3d at 758–59, 459 N.E.2d

14

at 1034.  The statute also provided the basis for a finding of probable cause in a recent case concerning the failure to disperse from an unpermitted protest, although that case is currently on appeal before the Seventh Circuit.  *Vodak v. City of Chi.*, 624 F. Supp. 2d 933, 959 (N.D. Ill. 2009).  Our research has not revealed any instance in which words alone have satisfied the statute's act requirement.  The broad wording may allow for such an interpretation, subject, however, to certain First Amendment constraints.  *See People v. Redwood*, 335 Ill. App. 3d 189, 192, 780 N.E.2d 760, 763 (4th Dist. 2002) (holding that disorderly conduct statute, which also refers to undefined "act[s]," could only be applied to spoken words when those words were "fighting words" unprotected by the First Amendment).

Courts have consistently construed broadly-worded statutes narrowly when applying them to mere words in order to prevent the type of content-based discrimination inimical to the First Amendment.  *See, e.g., Bachellar v. Maryland*, 397 U.S. 564, 570, 90 S. Ct. 1312, 1315 (1970) (vacating protestors' conviction for disorderly conduct where conviction may have been based on the fact that protestors "advocated unpopular ideas").  As the Supreme Court recently noted, "[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Aschroft v. American Civil Liberties Union*, 535 U.S. 564, 573, 122 S. Ct. 1700, 1707 (2002).  At the same time, the Supreme Court has also identified certain categories of speech that fall outside the scope of First Amendment protection precisely because of their content.  *United States v. Stevens*, 130 S. Ct. 1577, 1584 (2010).  These narrowly-defined categories include obscenity, defamation, fraud, incitement, and speech integral to criminal conduct.  *Id.*  Under Supreme Court and Illinois precedent, only speech falling into these categories can satisfy the "act" element of broadly

15

worded statutes like the one at issue here.[6]  *Redwood*, 335 Ill. App. 3d at 192, 780 N.E.2d at 763

("A statute that punishes spoken words alone, as [the disorderly conduct statute] may, cannot

withstand constitutional attack unless it cannot be applied to speech protected by the first and

fourteenth amendments, even if the speech punished is vulgar or offensive.") (internal citations

omitted); *see also Cohen v. California*, 403 U.S. 15, 19, 91 S. Ct. 1780, 1785 (1971)

(invalidating disorderly conduct conviction based upon protected speech); *Lewis v. City of New

Orleans*, 415 U.S. 130, 134, 94 S. Ct. 970, 973 (1974) (holding that statutes punishing mere

spoken words must be limited to unprotected speech).

    The category of unprotected speech relevant to the case at bar is incitement.[7]  The

Supreme Court established the current standard for evaluating incitement in *Brandenburg v.*

---

[6] Although Illinois courts have not had occasion to rule on the reckless conduct statute as applied to mere words, the thrust of both federal and state law on this issue is clear: only unprotected speech can serve as the basis for the punishment of mere words.  The language of the *Redwood* decision also indicates its general applicability in referring to "*a* statute that punishes spoken words alone."  335 Ill. App. 3d at 192, 780 N.E.2d at 763 (emphasis added).  The next clause, "as [the disorderly conduct statute] *may*," also affirms that the statute in question may, but need not always, apply to mere words.  *Id.*  Thus, the reckless conduct statute's broad reference to "acts," when applied to mere words as Defendants propose, triggers the same First Amendment scrutiny.  *Cohen*, 403 at 19, 91 S. Ct. at 1785; *Lewis*, 415 U.S. at 134, 94 S. Ct. at 973.

[7] The other possibly applicable category is fighting words.  But we conclude with little trouble that Plaintiff's comments were not fighting words.  The parties admit that Plaintiff did not direct her words towards the police themselves and was, at most, "shouting [in their] general direction."  (Hansen Dep. at 65.)  Instead, Plaintiff appears to have been directing her words at a sympathetic audience, judging from her own testimony and the responsive cheers from the crowd.  (Bass Dep. at 62; Davis Dep. at 79.)  Plaintiff also made only general statements about the police, not about any particular officer.  (Bass Dep. at 62–53.)  Thus, her statements were not the type of "personally abusive epithets . . . directed to the person of the hearer" that amount to fighting words.  *Cohen v. California*, 403 U.S. 15, 19, 91 S. Ct. 1780, 1785 (1971) (holding that the words "Fuck the Draft" written on the defendant's jacket were too general to be fighting words); *see also Texas v. Johnson*, 491 U.S. 397, 409, 109 S. Ct. 2533, 2542 (1989) (burning the United States flag is not a "direct personal insult").

*Ohio*. 395 U.S. 444, 89 S. Ct. 1827 (1969). That case concerned the criminal conviction of a Ku Klux Klan leader who, in a television interview with the local news, threatened "revengeance" against the President and members of Congress who "continue[d] to suppress the white, caucasian race." *Id.* at 446, 89 S. Ct. at 1829. The Court vacated the conviction on the grounds that "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.* at 447, 89 S. Ct. at 1829. Citing the tendency of incitement prosecutions to chill unpopular or controversial speech, the Court later noted in *Texas v. Johnson* that, "We have not permitted the government to assume that every expression of a provocative idea will incite a riot, but have instead required careful consideration of the actual circumstances surrounding such expression[.]" 491 U.S. 397, 401, 109 S. Ct. 2533, 2538 (1989) (overturning conviction for flag-burning). Thus, the requirement that speech be likely to produce "imminent" lawlessness significantly narrows the category of incitement. *Id.*

The instances in which courts have found the imminence required for incitement are accordingly quite rare. *Cf. Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 579, 121 S. Ct. 2404, 2434 (2001) (noting that cigarette advertisements failed *Brandenburg* with respect to encouraging under-age smoking); *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 928, 102 S. Ct. 3409, 3434 (1982) (holding that civil rights' leader's speeches indicating boycott violators would be "disciplined" or "have their necks broken" did not satisfy *Brandenburg*). In one of the few post-*Brandenburg* Illinois cases factually analogous to the present one, the Illinois Appellate Court affirmed a conviction under Illinois' mob action statute of a woman who

17

had encouraged a crowd to obstruct police officers making an arrest. *People v. Montgomery*, 179 Ill. App. 3d 330, 335, 534 N.E.2d 651, 654 (1st Dist. 1989). After observing the police attempting to arrest an individual involved in a fight outside a fast food restaurant, the defendant had exhorted fifteen to twenty people: "don't let him/them take that man away." *Id.* at 332, 534 N.E.2d at 652. Although the defendant had also made comments that "all policemen are no fucking good and they beat up people," the court stressed that the defendant "was not punished for her criticism of the police, but for her unlawful incitement of the crowd." *Id.* at 335, 534 N.E.2d at 654.

Although infrequently invoking *Brandenburg* explicitly, other cases have also dealt with citizen-police confrontations in front of a crowd. For instance, the Seventh Circuit stated in one such case considering Illinois' disorderly conduct statute that "arguing with a police officer, even if done loudly, or with profane or offensive language, will not, in and of itself constitute disorderly conduct." *Payne v. Pauley*, 337 F.3d 767, 777 (7th Cir. 2003) (denying summary judgment where the plaintiff claimed she did not "argue, swear, incite, obstruct, or resist" while objecting to her son's arrest). The presence of a gathering crowd watching the argument is also not dispositive. *Id.*; *see also People v. Nash*, 173 Ill.2d 423, 432, 672 N.E.2d 1166, 1171 (Ill. 1996) (citing *Brandenburg* to hold that "the State cannot punish mere advocacy or forbid, on pain of criminal punishment, assembly with others merely to advocate activity, even if that activity is criminal in nature"). In fact, "the demeanor of the crowd" and the "threat to public order" it poses can raise a genuine issue of material fact for the jury. *Payne*, 337 F.3d at 777; *see also Kies v. City of Aurora*, 156 F. Supp. 2d 970, 985 (N.D. Ill. 2001) (cited approvingly in *Payne* and determining that "whether there was a volatile crowd gathered" at a dispute between a

18

woman and a police officer was a question for the jury); *cf. Penn v. Chi. State Univ.*, 162 F.

Supp. 2d 968, 976 (N.D. Ill. 2001), *aff'd on other grounds by*, 296 F.3d 573 (upholding probable

cause for disorderly conduct where the plaintiff, accompanied by 300 increasingly angry fellow

students, banged on dormitory windows and yelled obscenities at police inside).

## I.  Plaintiff's Conduct

Having considered the legal bases for probable cause, we now turn to the facts.  There are

two possible "acts" that could have provided probable cause for Plaintiff's arrest: Plaintiff's

comments and Plaintiff's failure to disperse.  (Defs.' ¶¶ 37, 39, 43–46.)  720 ILCS 5/12-5(a).

We consider them both in turn.[8]

### 1.  Failure to Disperse

As we noted, Illinois law is clear that the word "act" in the reckless conduct statute

encompasses a "failure or omission to take actions."  *Khan*, 136 Ill. App. 3d at 759, 459 N.E.2d

at 1034.  Similarly, the failure to disperse when ordered to do so by a public peace officer gives

rise to probable cause to arrest.  *Jones v. Watson*, 106 F.3d 774, 779 (7th Cir. 1997); *City of Chi.

v. Fort*, 46 Ill.2d 12, 15, 262 N.E.2d 473, 475 (Ill. 1970).  The First Amendment also does not

prevent the police from arresting a person who is engaging in conduct otherwise protected by the

First Amendment, such as protesting, for failing to abide by reasonable time, place, and manner

---

[8] Throughout their briefs, Defendants focused largely on Plaintiff's "volatile comments to the growing and angry crowd" as providing probable cause.  (Defs.' Mem. at 6.)  Only in passing do Defendants point to Plaintiff's failure to disperse from the area outside the basketball court. (Defs.' Reply at 8.)  The failure to disperse argument creates less potential for the First Amendment pitfalls that exist under the words-as-acts argument on which Defendants focused. There are clear factual reasons why Defendants may have chosen not to prioritize the failure to disperse argument, however, and it is for these reasons that the argument does not support summary judgment for Defendants at this stage.

regulations of that conduct. *Adderly v. Florida*, 385 U.S. 39, 47–48, 87 S. Ct. 242, 247 (1966). Such regulations include non-content based orders to disperse from areas in which the speaker or protestor is not permitted to be. *Id.*; *Jones*, 106 F.3d at 779. Construing the facts in Plaintiff's favor, however, we are unable to find that probable cause existed to arrest Plaintiff for failing to disperse.

Defendants conceded that Plaintiff, as an Ickes Complex resident, did not have to disperse other than to leave the basketball court on July 22, 2007. (Pl.'s 56.1 Facts ¶¶ 7, 25–26; Defs.' Resp. ¶¶ 25–26; Hansen Dep. at 78.) Defendants do not claim that Plaintiff failed to leave the basketball court. Instead, they rely on the fact that Plaintiff admitted staying in the area outside the basketball court after the police had broken up the basketball game for at least thirty to forty-five minutes. (Defs.' 56.1 Facts ¶ 46; Bass Dep. at 56, 67.) But because Officers Hansen and Zacek knew Plaintiff to be an Ickes Complex resident, Plaintiff's remaining in the area did not suggest a refusal to disperse in the way similar behavior by a non-resident would have. (Hansen Dep. at 85; Zacek Dep. at 98–99.) Thus, Plaintiff's decision to remain outside the basketball court, which was, after all, located in her apartment complex, does not amount to an unambiguous refusal to disperse. *Compare Jones*, 106 F.3d at 779 (relying on the fact that the arresting officer "directed Jones to the other side of the street and warned him that if he did not go to the other side he would be arrested").

### 2. Plaintiff's Words

Moving to the primary basis for probable cause that Defendants posit, we now consider whether Plaintiff's comments, standing alone, provided probable cause. Because Plaintiff is the non-moving party, however, we make this determination based solely on the comments Plaintiff

admits she made.  We must also credit Plaintiff's rendering of the circumstances surrounding her statements to the extent "specific facts" in the record allow us to do so.  Fed. R. Civ. P. 56(e).

At her deposition, Plaintiff admitted stating that, "If it was white people, they wouldn't do that to them."  (Bass Dep. at 61.)  This statement roughly coincides with Officer Hansen's recollection of Plaintiff saying,  "If this was a white party, that there wouldn't be any problems."  (Hansen Dep. at 66.)  Plaintiff also admits complaining that the police "get away with so much" and that they are "crooked." (*Id.* at 62–63.)  It is important to note, however, that Plaintiff flatly denies saying to those whom she was addressing, "Why you niggers taking this shit?" and "Beat those cops' asses."  (Bass Dep. at 216–217.)  Other officers present also did not hear Plaintiff make this statement.  (Lomax Dep. at 60; Davis Dep. at 76; Riley Dep. at 51.)  Thus, Defendants' motion for summary judgment based on the existence of probable cause turns exclusively on her comments about "white people" and "crooked" police.

The circumstances in which Plaintiff made these comments are also disputed.  Plaintiff admits she made these comments while standing approximately twenty-five feet from the police to a group of at least five people.  (Pl.'s 56.1 Facts ¶¶ 33–34.)  Plaintiff testified that she was speaking in the context of a "small discussion" among a group of her female acquaintances.  (Pl.'s 56.1 Facts ¶ 35; Bass Dep. at 62.)  But Plaintiff also acknowledges that, even though she may have been speaking to a small group, she made these statements loud enough for Officers Hansen and Zacek to hear them, which they in fact did.  (Defs.' 56.1 Facts ¶¶ 41–42; Bass Dep. at 64.)  Plaintiff also admits that some who heard her statements cheered, but she cites Officer Davis' testimony as proof that cheering was the only reaction.  (Pl.'s 56.1 Facts ¶ 42.)

Although we do not rely on their version of the facts at this stage, we note that Defendants describe Plaintiff's audience and their reaction rather differently. Officer Zacek testified that Plaintiff was "working with" a group of fifty to one hundred people "to go against" the police. (Zacek Dep. at 90.) As he explained:

> The ones that were finally starting to leave once they heard [Plaintiff's] words, then stopped in their tracks and made the crowd even larger. And at one point, we were almost totally surrounded by a large crowd, who was now being verbally abusive, who was throwing bottles and rocks.[9]

(*Id*. at 77.) At one point, the situation became so dangerous for Officers Hansen and Zacek that they claim they had to retreat. (Zacek Dep. at 80, 83–84.)

With the facts now in view, we again reiterate that resting probable cause on Plaintiff's words alone is only appropriate if her words are unprotected speech, namely, incitement. *Redwood*, 335 Ill. App. 3d at 192, 780 N.E.2d at 763; *Cohen*, 403 U.S. at 19, 91 S. Ct. at 1785. We conclude that the words Plaintiff admits she said were not incitement. As a threshold matter, it is questionable whether Plaintiff's statements amount to the "advocacy of the use of force or of law violation[.]" *Brandenburg*, 395 U.S. at 447, 89 S. Ct. at 1829. At best, her statement that the largely black audience was being treated differently because of race by "crooked" police is an implicit call to resistance. While an implicit call to action can suffice under the *Brandenburg* test, we would have to accept Defendants' version of the circumstances in which Plaintiff spoke to find her words to be implicitly advocating for the use of force or violation of law. *United States v. White*, 610 F.3d 956, 960 (7th Cir. 2010) (noting that a "coded or implicit" request for

---

[9] Oddly, Officer Hansen recalled the reaction to Plaintiff's words differently. In particular, Officer Hansen testified that the crowd "didn't react on [Plaintiff's] words. (Hansen Dep. at 76–77.) The resolution of this inconsistency with Officer Zacek's testimony is a task for the jury.

criminal action suffices). Criticism of police action does not inherently imply resistance to it. *Payne*, 337 F.3d at 777. Thus, drawing reasonable inferences in Plaintiff's favor, Plaintiff's criticism of the police was not a call to resistance.

Even assuming for the sake of argument that Plaintiff's words were an implicit call to resist the police, we are unable to determine on Plaintiff's facts that her statements were "likely" to induce "imminent lawless action." *Brandenburg*, 395 U.S. at 447, 89 S. Ct. at 1829. Defendants treat Plaintiff's invocation of race among a black crowd of disputed number confronted by largely white police officers as if it were a spark to tinder. We are mindful, however, of *Johnson*'s admonition that the government may not "assume that every expression of a provocative idea will incite a riot." 491 U.S. at 401, 109 S. Ct. at 2538. True, Plaintiff made these statements in proximity to a group of people disgruntled by the police's decision to break up their Sunday entertainment and perhaps suspicious of the police's motivation. But we would be indulging exactly the type of assumptions proscribed by *Johnson* to think that Plaintiff's words were likely to trigger a race riot over a basketball game being broken up. At the very least, as in *Payne*, the circumstances in which Plaintiff spoke are sufficiently disputed to prevent summary judgment at this stage. 337 F.3d at 778.

Thus, because the undisputed facts do not establish that Plaintiff's comments were unprotected speech or that she refused an order to disperse, we are unable to conclude that there was probable cause to arrest Plaintiff for the events of July 22, 2007.

### c. Qualified Immunity

Officers Hansen and Zacek also claim that, even in the absence of probable cause, they are entitled to summary judgment based on qualified immunity. The doctrine of qualified

23

immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). Qualified immunity analysis has two prongs. First, we ask whether the facts, taken in the light most favorable to Plaintiff, show that Defendants violated a constitutional right. *Gonzalez*, 578 F.3d at 540. Second, we ask whether that constitutional right was clearly established at the time of the alleged violation. *Id.* Because the doctrine of qualified immunity aims to shield public officials from guessing about constitutional developments at their peril, Plaintiff bears the burden of showing that the right alleged to have been violated was clearly established at the time of incident giving rise to the case. *Id.* Plaintiff can satisfy this burden by pointing to a "clearly analogous case establishing a right to be free from the specific conduct at issue." *Id.* (quoting *Smith v. City of Chi.*, 242 F.3d 737, 742 (7th Cir 2001)). Where the qualified immunity determination turns on disputed facts, however, the issue cannot be resolved without a trial. *Id.*

We have already determined that there was no probable cause to arrest Plaintiff based on the statements she admits she made, which were protected speech. An arrest without probable cause violates the Fourth Amendment. *Id.* at 541. Supreme Court and Seventh Circuit precedent clearly establishes that mere criticism of police action, even if offered in front of a crowd, does not provide probable cause to arrest. *Payne*, 337 F.3d at 777; *see also City of Houston, Tex. v. Hill*, 482 U.S. 451, 462, 107 S. Ct. 2502, 2510 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.") Only unprotected

24

speech can support an arrest based on mere words. *Cohen*, 403 U.S. at 19, 91 S. Ct. at 1785. We have also determined that it is at least disputed whether Plaintiff refused the police's order to disperse. Thus, awarding qualified immunity at this stage would be inappropriate. *Gonzalez*, 578 F.3d at 540. We therefore deny Defendants' motion for summary judgment on Plaintiff's § 1983 false arrest claim with respect to Officers Hansen and Zacek.

### 2. Plaintiff's Motion for Summary Judgment

We now consider Plaintiff's motion for summary judgment on her § 1983 false arrest claim. Having already dealt extensively with many of the facts above, we need only reference a few key disputed facts, which we must now view in Defendants' favor. *See Anderson*, 477 U.S. at 255. Those are: what Plaintiff said and the character of the crowd. Unlike above, we must credit the testimony that, in addition to her undisputed statements about the police being discriminatory and "crooked," Plaintiff yelled to the people standing around her, "Let's get together and beat their white police asses." (Zacek Dep. at 76.) In contrast to what Plaintiff described as a small discussion, we must also rely on Defendants' testimony about Plaintiff "working with" a large and unruly crowd to "go against" the police. (*Id.* at 77.)

Plaintiff's exhortation to "beat [the] white police asses" clearly satisfies the *Brandenburg* test for incitement. *Id.*; 395 U.S. at 447, 89 S. Ct. at 1829. Urging a crowd to commit battery against the police is unambiguous "advocacy of the use of force or of law violation." 395 U.S. at 447, 89 S. Ct. at 1829. Similarly, making these statements to an already-gathered and incensed crowd was also "likely" to cause increased disobedience and even violence.[10] *Id.* Because they

---

[10] Plaintiff argues that her words would be unprotected "only if they had an effect on anyone." (Pl.'s Mem. at 12.) This argument misstates *Brandenburg*'s requirements. Plaintiff's speech need only be "*likely*" to cause imminent lawless action, but lawless action need not

satisfy *Brandenburg*, the words Officers Hansen and Zacek claim they heard Plaintiff say were incitement.  *Id.*  As incitement, Plaintiff's words were unprotected speech and could serve as the basis for probable cause to arrest her.  *Gower v. Vercler*, 377 F.3d 661, 670 (7th Cir. 2004) (upholding probable cause for disorderly conduct based on fighting words).  Thus, when we credit Defendants' version of the facts, Officers Hansen and Zacek had probable cause to arrest Plaintiff based on her statements and her § 1983 false arrest claim fails.  Therefore, we must also deny Plaintiff's motion for summary judgment on her § 1983 false arrest claim.

### B.  Count VII: § 1983 First Amendment Claim

We now turn to Plaintiff's § 1983 First Amendment claim.  Both Plaintiff and Defendants filed motions for summary judgment on this claim, and as before, we begin by considering Defendants' motion.

### 1.  Defendants' Motion for Summary Judgment

Plaintiff claims Officers Hansen and Zacek arrested her because of her criticisms of the police on July 22, 2007.  (Compl. ¶¶ 45–46.)  Police retaliation against a citizen for the exercise of a constitutionally protected right violates the Constitution.  *Morfin v. City of East Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003).  To prove her claim that the police arrested her for exercising her First Amendment rights, Plaintiff must show:  first, that her conduct was constitutionally protected; and second, that her protected conduct was a motivating factor in her arrest.[11]  *Id.*; *see also Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) (requiring plaintiff

---

actually occur.  *Brandenburg*, 395 U.S. at 447, 89 S. Ct. at 1829.

[11]  The parties indicated that a plaintiff need only prove that the exercise of a constitutional right was a "substantial" factor in the alleged retaliatory action.  But the Seventh Circuit has recently interpreted the Supreme Court's holding in *Gross* as requiring "but-for"

26

to prove but-for causation in a First Amendment retaliation claim). At this stage, we evaluate whether Plaintiff has adduced evidence from which a reasonable jury could conclude that she has satisfied these elements. *Fairley*, 578 F.3d at 526.

Plaintiff has satisfied her burden largely because Defendants admit that they arrested Plaintiff for her words. Officer Hansen testified that Plaintiff's words were her only acts that endangered the bodily safety of others. (Hansen Dep. at 72–73.) Similarly, Officer Zacek admitted that Plaintiff did nothing illegal on July 22 other than speak words. (Zacek Dep. at 86.) Furthermore, when Plaintiff asked Officer Hansen why she was being arrested, she says he said because of "your fucking mouth." (Bass Dep. at 97.) Thus, this claim also turns on what words Plaintiff said and whether they were constitutionally protected. Accepting Plaintiff's version of what she said, which we have already determined to be protected speech, Defendants Hansen and Zacek arrested Plaintiff for exercising her First Amendment rights. *Morfin*, 349 F.3d at 1005.

Officers Hansen and Zacek are also not entitled to qualified immunity for this claim. As we noted above, qualified immunity protects government officials who make reasonable mistakes about whether their conduct violates the Constitution. *Gonzalez*, 578 F.3d at 540. The two-pronged inquiry asks whether a government official's conduct violated the Constitution and whether a reasonable official would have realized as much. *Id.* There is perhaps no more

---

causation in First Amendment retaliation claims. *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009) (interpreting *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009) as holding that "unless a statute . . . provides otherwise, demonstrating but-for causation is part of the plaintiff's burden in all suits under federal law"); *see also Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 501 (7th Cir. 2010) (overruling prior cases for omitting the but-for causation requirement).

obvious constitutional violation than arresting citizens for the content of their protected speech. *Bachellar*, 397 U.S. at 570, 90 S. Ct. at 1315; *see also Crawford-El v. Britton*, 523 U.S. 574, 592, 118 S. Ct. 1584, 1594 (1998) (noting the fact that "the First Amendment bars retaliation for protected speech 'is clearly established'"). The more relevant inquiry here is whether a reasonable officer would have recognized that Plaintiff's criticisms of the police, standing alone, were protected speech.

We have little trouble answering this question affirmatively. This case is not about difficult First Amendment line-drawing but is instead a factual dispute about what Plaintiff said on July 22, 2007. *Cf. Purtell v. Mason*, 527 F.3d 615, 626 (7th Cir. 2008) (awarding qualified immunity where defendant police officer incorrectly interpreted plaintiff's *admitted* statements as fighting words) (emphasis added). If we credit Plaintiff's testimony, as we must at this stage, then all she did was criticize the police. Supreme Court and Seventh Circuit precedent clearly establishes that mere criticism of police action, even if offered in front of a crowd, is protected speech. *Payne*, 337 F.3d at 777; *see also Hill*, 482 U.S. at 461, 107 S. Ct. at 2509 ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). Thus, Officer Hansen and Zacek's assertion of qualified immunity fails and we deny their motion for summary judgment on Plaintiff's First Amendment claim.

As above, however, we grant Defendants' motion for summary judgment on this claim with respect to Officers Davis, Flynn, and Boisso. None of these officers participated in Plaintiff's arrest, which is the retaliatory act Plaintiff claims she suffered as a result of exercising her First Amendment rights. (Compl. ¶ 45.) *Jenkins*, 147 F.3d at 583.

### 2.  Plaintiff's Motion for Summary Judgment

We now consider Plaintiff's motion for summary judgment on her § 1983 First Amendment claim.  As with Defendants' motion, however, the factual disputes at the core of this case—what words Plaintiff said on July 22, 2007 and the circumstances in which she said them—preclude summary judgment.  Officers Hansen and Zacek claim they arrested Plaintiff for urging the unruly crowd at the Ickes Complex on July 22 to "beat their white police asses." (Zacek Dep. at 76; Hansen Dep. at 67.)  Accepting this evidence as true, Plaintiff's words were not constitutionally protected, because they were incitement.  *Brandenburg*, 395 U.S. at 447, 89 S. Ct. at 1829.  As such, Plaintiff has failed to satisfy the first element of her First Amendment claim, and we therefore deny her motion for summary judgment on this claim.  *Morfin*, 349 F.3d at 1005.

### C.  Count II: § 1983 Failure to Intervene Claim

Next, we consider Defendants' motion for summary judgment on Plaintiff's claim against Officers Davis, Flynn, and Boisso for failing to intervene to prevent her false arrest.[12]  A police officer has a duty to intervene to prevent a false arrest "if the officer is informed of the facts that establish a constitutional violation and has the ability to prevent it."  *Morfin*, 349 F.3d at 1001. We conclude that summary judgment is appropriate for Officers Davis, Flynn, and Boisso on this count.  *Id.*

---

[12]  Although the Complaint does not identify the specific officers against whom Plaintiff brings this claim, we assume she brings the claim only against Officers Davis, Flynn, and Boisso.  We make this assumption based on the fact that Officers Hansen and Zacek committed the alleged constitutional deprivation by arresting Plaintiff, and logic dictates that they cannot be liable for failure to intervene in their own actions.

Officers Davis, Flynn, and Boisso all learned of what Plaintiff allegedly said to the crowd at the Ickes Complex from Officers Hansen and Zacek.  Although Officer Davis was present at the Ickes Complex on July 22, 2007, he could not make out the words Plaintiff said.  (Davis Dep. at 59–60.)  Although the record is somewhat unclear on this point, Officer Davis appears to have learned what Plaintiff allegedly said from Officer Hansen, who ordered him to prepare the misdemeanor complaint after Plaintiff's arrest.  (*Id.* at 88.)  Similarly, Officers Flynn and Boisso, neither of whom were present at the Ickes Complex on July 22, 2007, relied on the events as reported to them by Officers Hansen and Zacek after Plaintiff's arrest.  (Flynn Dep. at 12–13; Hansen Dep. at 81; Zacek Dep. at 124; Pl.'s 56.1 Facts ¶¶ 75–76.)

Because Officers Davis, Flynn, and Boisso relied on the facts as reported to them by Officers Hansen and Zacek, they were "not informed of the facts that establish a constitutional violation."  *Morfin*, 349 F.3d at 1001.  As the Seventh Circuit has held, police officers can rely on a "reasonably credible witness or victim" who says that "someone has committed, or is committing, a crime[.]"  *Gower*, 377 F.3d at 668–69 (quoting *Jenkins*, 147 F.3d at 585).  The fact that the witness may also be a police officer does not change the analysis.  *See Spiegel v. Cortese*, 196 F.3d 717, 726 (7th Cir. 1999).  In this case, Officers Hansen and Zacek were "reasonably credible witnesses" who told Officers Davis, Flynn, Boisso that Plaintiff had urged an unruly crowd to "kick the police asses."[13]  *Id.* (Defs.' Ex. 19 at 2.)  On this basis, Officers

---

[13]  Although Plaintiff claims Officer Hansen in particular had a grudge against her, she offers no evidence indicating Officers Davis, Flynn, or Boisso knew of this potential bias. Officer Davis, who was a member of Officer Hansen's tactical unit, testified he never heard Officer Hansen call Plaintiff an "ugly bitch," as she claims Officer Hansen did repeatedly. (Davis Dep. at 102; Bass Dep. at 69–70.)  Thus, Officers Davis, Flynn, and Boisso had no reason to doubt the credibility of Officers Hansen and Zacek.

Davis, Flynn, and Boisso would have had reason to believe probable cause to arrest Plaintiff existed. Thus, they had no knowledge of the alleged constitutional violation. *Morfin*, 349 F.3d 989, 1001. We therefore grant summary judgment for Defendants on Plaintiff's failure to intervene claim.

### D. Count III: § 1983 Unlawful Detention Claim

Plaintiff also claims that her detention violated the Fourth Amendment in that it was unreasonably prolonged as punishment. (Compl. ¶ 28.) We now consider Defendants' motion for summary judgment on this claim, which we grant.

Separate and apart from an unreasonable arrest, an unreasonable detention incident to arrest violates the Fourth Amendment. *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S. Ct. 854, 863 (1975). After making an arrest, the police may hold a person for a "brief period of detention to take the administrative steps incident to arrest." *Id.* The police may not "unreasonably delay" this process, however, in order to punish the arrested person or to gather additional evidence to justify the arrest.[14] *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S. Ct. 1661, 1670 (1991). Where there is evidence of an improper purpose, the Seventh Circuit has deemed

---

[14] In *McLaughlin*, the Supreme Court established a burden-shifting framework in which detentions less than forty-eight hours prior to a hearing before a neutral magistrate are presumptively reasonable. 500 U.S. at 56, 111 S. Ct. at 1670. We do not apply *McLaughlin*'s framework in this case, however, because the Seventh Circuit has held that it does not apply where the police do not plan to bring the arrested person before a magistrate. *Portis v. City of Chi.*, 613 F.3d 702, 704 (7th Cir. 2010). Although the record is not entirely clear as to whether the police ever intended to present Plaintiff before a magistrate, Defendants appear to concede the point in their Reply. There, they acknowledge that Plaintiff could bring an unreasonable detention claim "where it is not anticipated that [Plaintiff] would appear before a judge before for a bond hearing." (Defs.' Reply at 4.) Defendants go on to argue, however, that Plaintiff's detention was reasonable, because the length of Plaintiff's detention was due to her request for medical treatment. (*Id.* at 4-5.)

detentions as short as four hours to be potentially unreasonable. *Gramenos v. Jewel Cos., Inc.*, 797 F.3d 432, 436 (7th Cir. 1986). And while detentions even as short as four hours "require an explanation," the plaintiff still "bears the burdens of proof and persuasion in showing that any particular detention was excessive[.]" *Id.* at 437; *Portis*, 613 F.3d at 705. In evaluating an unreasonable detention claim, the court "must examine not only the length of a given detention but also the reasons why release was deferred." *Portis*, 613 F.3d at 705.

Furthermore, as with Plaintiff's false arrest claim, we reiterate that each individual Defendant must have "caused or participated in" Plaintiff's alleged constitutional deprivation in order to be individually liable under § 1983. *Jenkins*, 147 F.3d at 583. Seventh Circuit precedent establishes that an arresting officer is not responsible for any unreasonable detention occurring after the officer transfers custody of the arrested individual. *Tibbs v. City of Chi.*, 469 F.3d 661, 665 (7th Cir. 2006).

In this case, it is undisputed that Officers Hansen and Zacek arrested Plaintiff at 7:20 p.m. on July 25, 2007. (Defs. Facts ¶ 57.) It is also undisputed that the police did not release Plaintiff from custody until early the following morning at approximately 5:00 a.m.[15] (Bass Dep. at 132; Defs.' Ex. 19 at 4.) Thus, Plaintiff remained in police custody for roughly nine hours and forty minutes.

Plaintiff has not offered sufficient evidence from which a reasonable jury could conclude that her detention was unreasonable. Although detentions as short as four hours can be constitutionally problematic, the length of Plaintiff's detention is hardly suspect in light of

---

[15] As above, we note Plaintiff's objection to reliance on Defendants' Exhibit 19, which purports to be the police report regarding Plaintiff's arrest. Because Plaintiff herself relies on this exhibit as substantive evidence, we deem her objection waived.

the fact that she sought medical treatment while in custody.  (Bass Dep. at 118–124.)

*Gramenos*, 297 F.2d at 437; *Portis*, 613 F.3d at 705.  Furthermore, Plaintiff's claim that

Defendants sought to punish her by unreasonably delaying her release has no merit.  (Compl. ¶

28; Pl.'s Resp. at 7.)  The possible evidence of punitive intent attaches only to Officer Hansen,

who allegedly promised to "get that bitch" and made other derogatory statements towards

Plaintiff.  (Pl.'s 56.1 Facts ¶ 60; Vance Dep. at 32-33; Fleming Dep. at 63.)  But even assuming

Officer Hansen sought to punish Plaintiff, there is no evidence that the other Defendant Officers

shared this intent.  Furthermore, in the event Officer Hansen sought to punish Plaintiff, he and

Officer Zacek only had custody of her for the short period of time between Plaintiff's arrest and

her transfer to a holding cell at the police station.  (Bass Dep. at 115.)  Thus, they had no ability

to prolong Plaintiff's detention even if they had wanted to do so.[16]  *Tibbs*, 469 F.3d at 665.

Plaintiff has therefore failed to show that any of the Defendants unreasonably prolonged her

detention.

 Plaintiff is correct that there is no bright-line rule as to what length of detention incident

to arrest is reasonable.  (Pl.'s Resp. at 7.)  *Portis*, 613 F.3d at 704.  But the fact that there is no

bright-line rule does not obviate Plaintiff's burden of producing evidence that Defendants

unreasonably prolonged her detention.  *Id.* at 705.  This she has not done.  *Cf. Gramenos*, 297

F.2d at 437 (noting that the detaining officer stated, "[W]e are going to keep you here for four

---

[16]  Plaintiff cites Illinois statutory law for the proposition that any of the Defendant
Officers could have released Plaintiff, given that her charge was a misdemeanor.  (Pl.'s Resp. at
7.)  But this argument conflates what Defendants could have done with what they were
constitutionally required to do.  For Fourth Amendment purposes, it is clear that Defendants
were free to hold Plaintiff while they completed the administrative tasks incident to arrest,
regardless of whether Illinois law gave them the discretion to release Plaintiff.  *Gerstein*, 420
U.S. at 114, 95 S. Ct. at 863.

hours"). Thus, we grant Defendants' motion for summary judgment on Plaintiff's unreasonable detention claim with respect to all Defendants.

### E. Counts IV and V: Civil Conspiracy Under § 1983 and § 1985

Plaintiff also claims that Defendants conspired to violate her rights in violation of § 1983 and § 1985. We now consider Defendants' motion for summary judgment on these counts, which we grant as to all Defendants.

To establish a conspiracy claim under § 1983, Plaintiff must show: "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). Under § 1985, Plaintiff must also prove that the conspirators acted with racial or other class-based animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798 (1971). Circumstantial evidence can be sufficient to establish a conspiracy, but mere speculation can not. *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003). Moreover, the circumstantial evidence must be sufficient to "permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 263 (7th Cir. 1999).

Plaintiff has provided no direct evidence of an "express or implied agreement" but instead points to the three-day gap between the incident at the Ickes Complex and her arrest as circumstantial evidence of a conspiracy. *Scherer*, 840 F.2d at 442. (Pl.'s Resp. at 12.) But whatever inferences one could draw from the three-day gap viewed in isolation recede in light of

the fact that Officers Hansen and Zacek decided to arrest Plaintiff on the day of the incident.[17]

(Hansen Dep. at 79.)  Indeed, Officer Davis heard Officer Hansen say to another officer—while

still at the Ickes Complex on July 22, 2007—that he intended to arrest Plaintiff.  (Davis Dep. at

84; Hansen Dep. at 79.)  Furthermore, Officers Hansen and Zacek prepared a case incident report

that day about the incident after a superior officer told them to do so.  (Zacek Dep. at 86–87;

Defs.' Ex. 23.)  Significantly, the case incident report includes Plaintiff's exhortation to attack

the police.  (Defs.' Ex. 23 at 3.)  Thus, the time frame during which Officers Hansen and Zacek

allegedly agreed to falsely arrest Plaintiff is significantly more limited than Plaintiff

acknowledges.  Given that both Officers Hansen and Zacek said they heard Plaintiff urge the

crowd to attack the police, they would have had to come to an agreement about this version of

events very quickly.  (Hansen Dep. at 76; Zacek Dep. at 75–76.)  Plaintiff has adduced no

evidence, circumstantial or otherwise, as to how Officers Hansen and Zacek reached an

agreement in this short time frame.  We therefore grant Defendants' motion for summary

judgment on both of Plaintiff's conspiracy claims.

## G.  Count VI:  State Law Malicious Prosecution Claim

Plaintiff also brings a state law claim for malicious prosecution.  Although they do not

argue the issue in this motion, Defendants previously raised the state statute of limitations as an

---

[17]  Plaintiff claims to dispute whether Officer Hansen decided to arrest Plaintiff on July 22, 2007.  To Defendants statement that "Hansen made [the] decision to arrest Plaintiff on July 22, 2007," Plaintiff responded: "Hansen delayed the arrest out of malice because he could not figure out what crime Taneysha Bass had committed."  (Defs.' 56.1 Facts ¶ 53; Pl.'s 56.1 Resp. ¶ 53.)  This response does not contest when the decision to arrest occurred.  Instead, it contests the reason the arrest was delayed.  Furthermore, the confusion about the appropriate charge does not alter the fact that Officer Hansen had already made the decision to arrest Plaintiff.  Facts not denied with support from the record are admitted.  *Smith*, 321 F.3d at 683.

affirmative defense in their Amended Answer. (Dkt. No. 22.) Because the state statute of limitations bars Plaintiff's malicious prosecution claim, we dismiss this claim accordingly.

The statute of limitations for Plaintiff's state law malicious prosecution claim is one year.[18] 745 ILCS 10/8-101. The Illinois Local Government and Governmental Employees Tort Immunity Act states that "[n]o civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." *Id.* Plaintiff's malicious prosecution claim accrued on September 12, 2007, when the Circuit Court of Cook County struck her case with leave to reinstate. (Pl.'s Fact ¶ 78.) *Ferguson v. City of Chi.*, 213 Ill.2d 94, 99, 820 N.E.2d 455, 459 (Ill. 2004) (holding that a malicious prosecution claim accrues when "the criminal proceeding on which it is based has been terminated in the plaintiff's favor"); *Boyd v. City of Chi.*, 378 Ill. App. 3d 57, 72, 880 N.E.2d 1033, 1046 (1st Dist. 2007) (holding that striking of case with leave to reinstate constitutes "termination of the proceeding in favor of plaintiff"). Plaintiff did not file her initial complaint until February 19, 2009, a full seventeen months after her state malicious prosecution claim accrued. (Dkt. No. 1.) We therefore dismiss this claim as time-barred.

## IV. CONCLUSION

Whether Plaintiff's arrest was constitutional turns on what words Plaintiff said on July 22, 2007 and the circumstances in which she said them. Because these facts are disputed, they must be decided by a jury. For the sake of clarity, we reiterate that we deny Defendants' motion

---

[18] Because Plaintiff's federal claims are not subject to the Illinois Local Government and Governmental Employees Tort Immunity Act, the statute of limitations for those claims is two years. *Long v. Williams*, 155 F. Supp. 2d 938, 943 (N.D. Ill. 2001).

for summary judgment with respect to Officers Hansen and Zacek on Counts I and VII. We

also deny Plaintiff's motion for partial summary judgment on Counts I and VII. We grant

Defendants' motion with respect to all other Defendants on all other counts. It is so ordered.


_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Date: December 7, 2010