UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TANEYSHA BASS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09-cv-1087 |
| | ) | |
| v. | ) | |
| | ) | |
| BRIAN J. HANSEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Taneysha Bass has filed a motion to reconsider ("Motion") our order of December 7, 2010 ("Order"). In the Order, we granted in part and denied in part Defendants' motion for summary judgment and denied Plaintiff's motion for partial summary judgment. Plaintiff now asks us to reconsider that Order and claims we misapprehended the law. (Mot. at 1.) She is only partially correct in that Plaintiff's malicious prosecution claim should not be dismissed as time-barred. (Ord. at 36.) Plaintiff's remaining arguments do not justify otherwise revisiting our prior Order.

## I. STANDARD OF REVIEW

Although she does not say so, we presume Plaintiff brings her Motion pursuant to Rule 59(e). Fed. R. Civ. P. 59(e). To succeed on a Rule 59(e) motion, the moving party must present newly discovered evidence, point out an intervening change in controlling law, or clearly establish that the court committed a manifest error of law or fact. *See Caisse Nationale de Credit Agricole v. CBA Indus., Inc.*, 90 F.3d 1264, 1269–70 (7th Cir. 1996); *Publishers Res., Inc.*

*v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal citation omitted). Indeed, reconsideration is appropriate in very limited circumstances, such as "where (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in law . . . or (5) there has been a controlling or significant change in the facts." *BP Amoco Chem. v. Flint Hills Res., LLC*, 489 F. Supp. 2d 853, 856 (N.D. Ill. 2007); *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191-92 (7th Cir. 1990); *see also Hickory Farms, Inc. v. Snackmasters, Inc.*, 509 F. Supp. 2d 716, 719 (N.D. Ill. 2007) ("Reconsideration is appropriate, generally speaking, only when the Court overlooked or misunderstood something.").

## II. ANALYSIS

### A. Dismissal of Count VI as Time-Barred

Our dismissal of Count VI, Plaintiff's malicious prosecution claim, as time-barred was incorrect. The Illinois Supreme Court's decision in *Ferguson v. City of Chicago* establishes the relevant time period for bringing a state malicious prosecution claim based on a court's order to strike on leave to reinstate ("SOL") a criminal charge. 213 Ill.2d 94, 104, 820 N.E.2d 455, 461–62 (Ill. 2004). In *Ferguson*, the Court held that a malicious prosecution claim based on an SOL termination accrues for statute of limitations purposes at the time when the state can no longer seek to reinstate the criminal charge. *Id.* This time depends on whether and when the

accused invokes the right to a speedy trial pursuant to Illinois' speedy trial statute and the United States Constitution. *Id.* If an accused released on bail or recognizance invokes the right to a speedy trial, the state has 160 days from the time the right is invoked to reinstate the charge.[1] *Id.*; 725 ILCS 5/103-5(b). If the state does not reinstate the charge within this period, the criminal proceeding terminates. *Ferguson*, 213 Ill.2d 94 at 104, 820 N.E.2d at 462. Accordingly, it is at this point that a malicious prosecution claim based on an SOL termination accrues, if at all. *Id.*

In this case, we held that Plaintiff's malicious prosecution claim accrued on September 12, 2007, the date of the SOL order. (Ord. at 36.) We therefore initially concluded that Plaintiff's filing of her initial complaint on February 19, 2009 occurred after the one-year statute of limitations period for her malicious prosecution claim had run. (*Id.*) However, based on *Ferguson*, Plaintiff's malicious prosecution claim properly accrued on February 19, 2008, and was not time-barred when she filed it exactly one year later.

---

[1] In her Motion, Plaintiff assumes without explanation that she properly invoked her right to a speedy trial and thereby triggered the 160-day period established by the Illinois speedy trial statute. (Mot. at 2.) But the speedy trial statute requires that, when the accused is on bail or recognizance, a demand for a speedy trial must be *written* in order to initiate the 160-day period. 725 ILCS 5/103-5(b) ("Any demand for trial made under this subsection (b) shall be in writing[.]") The record does not indicate that Plaintiff, who was released on a non-secured bond, made such a demand in writing. Instead, the record indicates that Plaintiff merely responded "Yes" when asked by the state court judge whether she would like a jury prior to the state's motion to SOL the charge. (Dkt. No. 120, Ex. 20, at 2.) By contrast, the plaintiff in *Ferguson* filed a *written* demand for a trial immediately *after* his case was SOL'd. 213 Ill.2d at 97–98, 820 N.E.2d at 458. We will assume for present purposes, however, that Plaintiff properly asserted her right to a speedy trial and triggered the 160-day statutory period.

But before we decide whether this claim should be reinstated and against whom,[2] the parties should brief the issue of whether Plaintiff has satisfied the second element of her malicious prosecution claim.[3] *See Ross v. Mauro Chevrolet*, 369 Ill. App. 3d 794, 801, 861 N.E.2d 313, 319 (1st Dist. 2006) (requiring "termination of the proceeding in favor of plaintiff"). Specifically, has Plaintiff offered evidence from which a reasonable jury could conclude that the SOL of her criminal charge was a "favorable termination" of the criminal proceeding against her? *See Swick v. Liautaud*, 169 Ill.2d 504, 513, 662 N.E.2d 1238, 1243 (Ill. 1996); *Cult Awareness Network v. Church of Scientology Int'l*, 177 Ill.2d 267, 277–80, 685 N.E.2d 1347, 1351–54 (Ill. 1997). Because the SOL of Plaintiff's criminal charge did not terminate the proceedings on the merits, Plaintiff must show that her charge was SOL'd "for reasons consistent with [her] innocence." *Swick*, 169 Ill.2d at 513, 662 N.E.2d at 1253 (1996). Whether Plaintiff satisfies this burden depends on the "circumstances under which the disposition was obtained." *Ferguson*, 213 Ill.2d at 103, 820 N.E.2d at 461 (citing *Cult Awareness Network*, 177 Ill.2d 267 at 277–80, 685 N.E.2d 1347 at 1351–54). In this supplemental briefing, the parties should explain how the evidence in the record, specifically the transcript of the state criminal proceeding, establishes or fails to establish that Plaintiff's charge was SOL'd for "reasons consistent with

---

[2] Plaintiff asks that we reinstate her claim against "all defendants," but then fails to include the City of Chicago in listing the Defendants immediately thereafter. (Mot. at 3.) We are curious as to whether Plaintiff is therefore stipulating to the dismissal of the City of Chicago, who was only a Defendant with respect to Plaintiff's malicious prosecution claim.

[3] Our request for more briefing on the second element of Plaintiff's malicious prosecution claim does not indicate whether we have determined that there are genuine issues of material fact regarding the other elements of the claim.

[her] innocence." *Swick*, 169 Ill. 2d at 513, 662 N.E.2d at 1253. The parties have seven days from the issuance of this order to submit their briefs on this specific issue.[4]

**B. Other Claims**

As for Plaintiff's arguments regarding her other claims, we do not believe she has identified any other "manifest errors of law or fact" that require correction. *Oto*, 224 F.3d at 601. Instead, these errors she alleges are either misunderstandings of our Order or attempts to renew old arguments. For the sake of clarity, we discuss them each briefly.

**I. Summary Judgment for Officers Davis, Flynn, and Boisso on Counts I and VII**

Plaintiff argues that we improperly granted summary judgment for Defendants Dennis G. Davis, Charles E. Flynn, and Joseph W. Boisso on Counts I and VII, which allege violations of the Fourth and First Amendments. (Mot. at 6–8.) In particular, Plaintiff argues that we "too narrowly defined the 'arrest' of Taneysha Bass as the slapping on of handcuffs and confinement in the back seat of a police vehicle." (*Id.* at 6.) Plaintiff continues that her arrest "did not end when [she] was placed in handcuffs, but continued for approximately 10 hours." (*Id.* at 7.) Because her arrest was still ongoing during this period, Plaintiff argues that Officers Davis, Flynn, and Boisso played a role in it and can be held liable.

Plaintiff's argument misunderstands our Order. In pinpointing the moment at which Plaintiff's arrest initially occurred, we were not implying that Plaintiff ceased to be under arrest, or "seiz[ed]" in Fourth Amendment terms, after that moment. U.S. Const. amend IV. Instead, we focused on that moment because it is the relevant moment for determining whether there was probable cause to arrest Plaintiff. *See Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir.

---

[4] The briefs should not exceed three pages and are to be submitted contemporaneously.

2009) ("A police officer has probable cause to arrest a person if, *at the time of the arrest*, the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'") (emphasis added) (internal citations omitted). In other words, there are two elements to the constitutional tort of false arrest: (1) an arrest (2) without probable cause. *Id.* Even though the seizure establishing the first element may persist over time, the second element must be established, if at all, at the moment of the initial arrest. *See Jenkins v. Keating*, 147 F.3d 577, 583–84 (7th Cir. 1998) (affirming summary judgment on false arrest claim for officer who did not participate in initial arrest but only in preparing complaint while plaintiff remained in custody). Thus, because Officers Davis, Flynn, and Boisso had no role in facilitating the initial arrest, they did not "cause[] or participate in" the alleged constitutional tort of false arrest.[5] *Id.* at 583.

Given the timeline of events, Officers Davis, Flynn, and Boisso could only be liable for failing to intervene to stop the constitutional deprivation. As we held in our Order, however, a police officer is only liable for failure to intervene "if the officer is informed of the facts that

---

[5] In her Motion, Plaintiff asks: "[W]ho is responsible for [Plaintiff's] arrest, that is, her 10-hour detention?" (Mot. at 7.) If the jury concludes Officers Hansen and Zacek falsely arrested Plaintiff, then they would be liable for Plaintiff's detention incident to that false arrest. As the Supreme Court stated in *Wallace v. Kato*: "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more." 549 U.S. 384, 390, 127 S.Ct. 1091, 1096 (2007) (citation omitted). Because Plaintiff was released prior to the institution of legal proceedings, the relevant time for assessing the scope of liability would be her release from custody. That is the moment she ceased to be "seiz[ed]" within the meaning of the Fourth Amendment. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980).
We also point out that the issue of the scope of Plaintiff's damages for her false arrest claim is distinct from whether the length of Plaintiff's detention, by itself, gives rise to a separate Fourth Amendment claim for unlawful detention. We reaffirm below that it does not.

establish a constitutional violation and had the ability to prevent it." *Morfin v. City of East Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003). Officers Davis, Flynn, and Boisso were not "informed of the facts" establishing the violation, because they reasonably relied on Officers Hansen and Zacek's reports of Plaintiff's inciteful speech. *Id.* (Ord. at 28–31.) Likewise, Officers Davis, Flynn, and Boisso did not cause the alleged First Amendment violation of arresting Plaintiff for protected speech, because for all they knew, Plaintiff's arrest was based on unprotected speech. Thus, our granting of summary judgment for Officers Davis, Flynn, and Boisso on Counts I and VII was not erroneous.

### ii. Denial of Plaintiff's Motion for Summary Judgment on Count I

Plaintiff next argues that we should have granted her motion for summary judgment on Count I, the false arrest claim. (Mot. at 8–10.) In particular, she faults the Order for focusing on whether the statements Defendants claim she made were incitement without adequately analyzing the elements of reckless conduct. (Mot. at 9.) As she argues, "even if plaintiff's speech were not protected speech, that does not conclusively mean that a crime was committed." (*Id.*)

Plaintiff's argument privileges form over substance. Our analysis focused on whether words alone could qualify as the "act" under Illinois' reckless conduct statute, because that issue was one of first impression and was hotly contested.[6] 720 ILCS 5/12-5(a). We did not elaborate on the other elements of the statute, because they are quite obviously established by the facts as

---

[6] Illinois' reckless conduct statute provides: "A person who causes bodily harm to or endangers the bodily safety of an individual by any means, commits reckless conduct if he or she performs recklessly the acts that cause the harm or endanger safety, whether they otherwise are lawful or unlawful." 720 ILCS 5/12-5(a).

Defendants allege them.  Indeed, it does not take much to conclude that attempting to incite a riot among a crowd of disgruntled individuals "endangers the bodily safety of an individual"— namely, anyone in the vicinity.  *Id.*  Similarly, we need not alight long to conclude that one who attempts to incite a riot acts "recklessly," that is, in "conscious[] disregard[] [of] a substantial and unjustifiable risk" that the result "described by the statute defining the offense" will follow.  *Id.*; 720 ILCS 5/4–6.  In other words, attempting to incite a riot is a conscious disregard of the risk that someone might hurt.  Thus, accepting Defendants version of the facts, as we must, summary judgment for Plaintiff is inappropriate.

### iii. Summary Judgment for Defendants on Count III

Lastly, Plaintiff asks us to reconsider our grant of summary judgment for Defendants on Count III, the unlawful detention claim.  As she did previously, Plaintiff argues that "the reasonableness of Plaintiff's detention is a question for the jury."  (Mot. at 10.)  In support of this argument, Plaintiff also again invokes the Seventh Circuit's decision in *Portis v. City of Chicago* for the proposition that "detentions as brief as four hours could be excessive and must be justified."  613 F.3d 702, 705 (7th Cir. 2010).

Plaintiff's argument largely retreads the same ground and does nothing to persuade us that our prior ruling was correct.  As before, Plaintiff's reliance on *Portis* is misplaced.  In *Portis*, the Seventh Circuit reversed a grant of summary judgment for plaintiffs in a class-action challenging the length of detention for persons arrested by the Chicago Police for fine-only misdemeanors.  613 F.3d at 703.  The district court had concluded as a matter of law that taking more than two hours to release the class members after the generation of their Central Booking ("CB") numbers was unreasonable.  *Id.*  The Seventh Circuit rejected the adoption of such a

bright-line rule, decertified the class, and remanded the case to the district court. *Id.* at 705–706. In doing so, the Seventh Circuit held that the "court must examine not only the length of a given detention but also the reasons why release was deferred." *Id.* at 705.

That is precisely what we did in our Order, where we concluded that Plaintiff had offered no evidence that the length of her detention was unreasonable in light of her seeking medical care while in custody. (Ord. at 32–34.) Yet Plaintiff again cites the roughly ten-hour duration of her detention and attempts to shift the burden of proof to Defendants to show why this length of time is reasonable. (Mot. at 12.) Plaintiff's argument relies on a misreading of *Portis*' statement regarding the need to justify even short detentions. 613 F.3d at 705. The point in *Portis* is that a court must examine all the circumstances of a particular detention rather than fixate on the numerical length of detention. And despite acknowledging that the presumption of reasonableness that the Supreme Court adopted in *McLaughlin* for detentions less than forty-eight hours did not apply where no magistrate hearing was contemplated, the *Portis* Court was nevertheless inclined to exhibit the same type of deference upon which the *McLaughlin* presumption rested. *See Portis*, 613 F.3d at 704 (observing that the fact that *McLaughlin* does not control "does not mean that a district court can put *McLaughlin*'s rationale to one side[.]") (citing *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S. Ct. 1661, 1670 (1991)). *Portis* also focused on the time period after a desk sergeant issues a CB number. As the *Portis* Court noted, the issuance of the CB number occurs *after* the police have already verified the arrestee's identity, concluded he or she is not wanted on a more serious charge, and conducted a supervisory review of probable cause. *Id.* at 703. The Court's assumption without further

inquiry that these procedures were reasonable implies that the degree of justification Plaintiff demands is not that which the Seventh Circuit requires.

Most importantly, the record in this case is devoid of any evidence that there was anything unreasonable about Plaintiff's detention in light of her trip to the hospital. It is undisputed that Plaintiff's arrest occurred around 7:20 p.m. on July 25, 2007. (Dkt. No. 120 ¶ 57.) The arrest report then indicates that Officer Flynn approved probable cause for Plaintiff's arrest at 8:53 p.m. (Dkt. No. 120, Ex. 19 at 3.) Around that time, Plaintiff, by her own admission, requested to go to the hospital and was there for between one to three hours. (Dkt. No. 120, Ex. 2 at 118–124.) The arrest report indicates that Plaintiff arrived at Central Female Lockup around 11:26 p.m. (Dkt. No. 120, Ex. 19 at 4.) Officer Boisso then completed the check for outstanding warrants and final review of the arrest report at around 2:32 a.m.—thereby completing the types of procedures with which the *Portis* Court apparently had no problem. (*Id.* at 5.) Plaintiff was released roughly two-and-a-half hours later at 5:00 a.m. on July 26, 2007. (*Id.*) 613 F.3d at 703. Thus, each step of Plaintiff's detention finds reasonable explanation in the record. Plaintiff offers nothing to contravene this explanation. As such, there is no genuine issue of material fact and summary judgment for Defendants on Count III was appropriate.[7]

## III. CONCLUSION

---

[7] Plaintiff asserts that, in our Order, we "seem[] to want [her] to make a showing of malice on the part of [D]efendants" and that no such showing is required. (Mot. at 11.) Plaintiff misreads our analysis. We focused on whether the length of Plaintiff's detention was attributable to punitive intent—as Plaintiff herself alleges in her amended complaint—not because a showing of malice is required but because pre-conviction detention for the purposes of punishment would be unreasonable. (Dkt. No. 34 ¶ 28.) As the *Portis* Court reiterated, evidence of punitive intent is evidence that even a short detention is unreasonable. 613 F.3d at 705.

We grant Plaintiff's Motion with respect to Count VI, her malicious prosecution claim. Accordingly, the parties shall submit contemporaneous supplemental briefs on the second element of Plaintiff's malicious prosecution claim in the manner and form as set forth in this opinion. With respect to all remaining Counts, we deny Plaintiff's Motion.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Date: February 3, 2011